OPINION
Defendant-appellant/cross-appellee, Shirley Brusaw, appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, terminating her marriage to plaintiff-appellee/cross-appellant, Scott Brusaw, dividing the parties' assets and liabilities, and ordering shared parenting of the parties' minor children. We affirm the judgment of the trial court.
The parties were married in January 1991 after living together for seven years. Two children were born issue of the marriage, and appellee adopted appellant's daughter from a previous relationship. In April 1998, appellee filed a complaint for divorce. In May 1998, appellant filed an answer and counterclaim. A hearing was held before the trial court on December 15, 1998, after which the trial court entered a final judgment entry and decree of divorce on March 1, 1999.
The trial court ordered that the parties participate in shared parenting and designated each party as residential parent for school enrollment purposes. The trial court granted the parties equal parenting time and ordered that appellant pay guideline child support for the parties' youngest two children[1] in the amount of $1,129.88 per month. In the division of property, the trial court allocated to appellee the marital home valued at $215,000 and the accompanying $220,000 mortgage, and all of the marital debt, totaling $12,014.67. Appellee was also awarded the entire interest in his deferred compensation agreement with his employer, one half of his 401k plan, and one half of the household goods. Appellant was awarded one half of the household goods and one half of appellee's 401k, in addition to a 1995 Chevrolet. Appellant was also awarded $1,120 per month in spousal support for three years. Appellant appeals, raising two assignments of error. Appellee cross-appeals, raising three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ABUSED ITS DISCRETION IN DECLINING TO AWARD WIFE ANY INTEREST IN HUSBAND'S DEFERRED COMPENSATION AGREEMENT.
In her first assignment of error, appellant contends that the trial court erred by failing to divide appellee's deferred compensation benefits between the parties.
Appellee has a deferred compensation agreement with his employer, Precision Industries. Under the agreement, appellee will receive a monthly income from Precision Industries upon retirement if he remains with the company until he retires at age sixty-two or sixty-five. Receipt of the benefit is contingent on appellee's agreement to continue to work for Precision Industries as a consultant after retirement, and his agreement not to work for any competitor of Precision Industries.
The trial court awarded the entire interest under the agreement to appellee, free and clear of any claim by appellant. After the decree of divorce was filed, appellant filed a motionnunc pro tunc requesting that the trial court modify its division of the deferred compensation plan to award her one half of the marital interest in the plan. The trial court denied the motion, finding that the deferred compensation agreement was a contingent benefit not subject to division.
A motion nunc pro tunc is a procedural device used to correct errors which prevent the trial court's decision from reflecting that which it intended to do initially. Baylor v. Killinger, (1933), 44 Ohio App. 523, 527. A nunc pro tunc entry may not be used to alter the conclusion of the trial court. Roth v. Roth
(1989), 65 Ohio App.3d 768, 770. Rather, nunc pro tunc entries correct judicial errors and are limited in proper use to reflecting what the court actually decided, not what the court should have decided. State ex rel. Litty v. Leskovyansky (1996),77 Ohio St.3d 97, 100.
In her motion, appellant did not allege that the trial court's decision inaccurately reflected its intended division of the marital property. Instead, appellant inappropriately requested that the trial court modify the division of marital property after it had been accurately journalized. In its entry denying the motion nunc pro tunc, the trial court stated: "[t]he court specifically finds that [appellee's] interest in said asset is contingent in nature because he is not yet vested in the asset. Accordingly, this is not an asset subject to division with [appellant]." It is this statement which causes the parties to wrestle with the issue of whether the agreement represents a true deferred compensation plan subject to division, or whether it is a contingent benefit not subject to division.
In general, deferred compensation benefits, in the form of "a fixed bonus guaranteed over a certain future period," earned with services performed during the marriage, are a marital asset subject to division upon divorce. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 132. In the present case, it is arguable whether the particular agreement is or is not a divisible deferred compensation plan due to the number of contingencies which must be met in order for the benefits to begin. However, the trial court did in fact include the agreement in its recitation and division of marital property and allocated the entire value of the agreement to appellee.
Although the trial court later characterized the agreement as a "contingent benefit not subject to division," the trial court had already allocated the asset in the decree of divorce. Absent an allegation of mistake in the journalization of the division of property, the original allocation cannot be altered through a nuncpro tunc entry. Roth, 650 Ohio App.3d at 770. Accordingly, the court's entry denying appellant's motion nunc pro tunc does not impact its prior allocation of the asset to appellee. Appellant's objection, therefore, must relate to whether the trial court's unequal allocation of the asset is equitable, not whether the plan itself is divisible.
A trial court's division of marital property must be equal, unless such a division would be inequitable, in which case the court must divide the property equitably. Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 355; R.C. 3105.171(C). A trial court's division of marital property cannot be disturbed absent a showing that the trial court abused its discretion in dividing the marital assets and liabilities. Martin v. Martin (1985), 18 Ohio St.3d 292,294-295. More than an error of law or judgment, an abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. The mere fact that a property division is unequal does not, standing alone, amount to an abuse of discretion. Brown v. Brown (July 21, 1997), Butler App. No. CA97-01-010, unreported, at 6.
In the present case, each party was awarded one half of appellee's 401k and one half of the household goods. Appellant was awarded an automobile and spousal support of $1,120 per month. Appellee was awarded the marital home, an asset with no equity due to the substantial mortgage, and the right to retain his entire interest in the deferred compensation agreement. Appellee was also required to assume all of the marital debt, totaling $12,014.67.
In view of the entire division of marital assets and liabilities in the present case, particularly considering the marital liabilities for which appellee is responsible, we find no abuse of discretion in the trial court's decision to award appellee any value which may arise out of his deferred compensation agreement with Precision Industries. See Mullen v.Mullen (July 13, 1998), Warren App. No. CA97-08-089, unreported. Finding no abuse of discretion, we overrule appellant's first assignment of error.
Assignment of Error No. 2:
 THE TRIAL COURT ABUSED ITS DISCRETION IN IMPLICITLY RULING THAT WIFE COULD NOT MOVE TO THE DAYTON MALL AREA AND SUCCESSFULLY PARTICIPATE IN A SHARED PARENTING PLAN WITH HUSBAND.
In her second assignment of error, appellant argues that the trial court erred by implicitly ordering her not to move from Lebanon, Ohio. Appellant contends that the trial court's decision, when read in tandem with the shared parenting plan, requires her to remain in Lebanon.
The trial court's decision states that "so long as mother remains in reasonable geographic proximity to father * * * a limited form of shared parenting can succeed." The decision continues, noting that employment and affordable housing is available to appellant in the Lebanon community. In the final decree of shared parenting, the trial court ordered that the children continue to attend school in the Lebanon school district and that both parents be considered residential parents for school enrollment purposes. From these statements, appellant draws the "implicit" conclusion that the trial court has prohibited her from relocating away from Lebanon.
When determining whether shared parenting is in the best interest of the children, the trial court is required to consider all relevant factors, including "[t]he geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting." R.C. 3109.04(F)(2)(d). In the present case, the trial court placed no limitations on appellant other than to require that she live within reasonable geographic proximity of appellee, a practical requirement if shared parenting is to be feasible.
At the time that the trial court ordered shared parenting, both parents resided in Lebanon. It was therefore appropriate for the trial court to designate both parties the residential parent for the purpose of determining school attendance. The trial court did indicate that it would be easier for the children if appellant continued to live in Lebanon, as the children would be attending school in that community. However, contrary to appellant's argument, the trial court made no order requiring appellant to live in Lebanon. Appellant's second assignment of error is overruled.
Cross-assignment of Error No. 1:
 THE TRIAL COURT ERRED IN AWARDING MOTHER EQUAL TIME WITH THE CHILDREN WHERE THE BEST INTERESTS OF THE CHILDREN DICTATE THAT FATHER BE NAMED THE RESIDENTIAL PARENT OF THE PARTIES' CHILDREN.
In his first cross-assignment of error, appellee contends that the trial court erred by ordering shared parenting. Appellee contends that the trial court gave undue weight to appellant's role as the primary caretaker, and that he should have been named the sole residential parent of the parties' minor children.
A trial court is vested with broad discretion when allocating parental rights and responsibilities. Davis v. Flickinger (1997),77 Ohio St.3d 415, 416-17; Pater v. Pater (1992), 63 Ohio St.3d 393,396. When reviewing a trial court's allocation of parental rights and responsibilities, an appellate court must be mindful that the trial court is better equipped to examine and weigh the evidence and make decisions concerning custody. Miller v. Miller
(1988), 37 Ohio St.3d 71, 74. Accordingly, a trial court's allocation of parental rights and responsibilities will not be reversed on appeal absent an abuse of discretion. Davis at 418.
When considering a motion for shared parenting, the trial court is required to take into account the child's interaction and relationship with his parents. R.C. 3109.04(F)(1)(c). However, the court cannot consider this factor alone, but must consider all relevant factors. R.C. 3109.04(F)(2).
Upon review of the trial court's decision, it is clear that the trial court was not unduly persuaded by appellant's role as the primary caretaker of the children. The trial court recited a number of factors indicating that shared parenting would be in the best interest of the children. In addition to noting appellant's role as primary caretaker, the trial court also recognized appellee's "expansive role" in raising the children. The trial court reviewed each party's strengths and weaknesses as a parent and concluded that it was to the children's benefit that the parties continue to share parental responsibilities. We find no abuse of discretion in the trial court's decision ordering shared parenting. Appellee's first cross-assignment of error is overruled.
Cross-assignment of Error No. 2:
 THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO DEVIATE FROM GUIDELINE CHILD SUPPORT WHERE THE PARENTS ARE SHARING EQUALLY IN THE TIME AND CARE OF THE CHILDREN.
In his second cross-assignment of error, appellee contends that the trial court erred by ordering him to pay full guideline child support when the parties are equally responsible for the care of the children. Appellee argues that a downward deviation in his child support obligation is mandated by the parties' shared parenting plan which equally divides parenting time between the parties.
A trial court has broad discretion in calculating child support awards. Dunbar v. Dunbar (1994), 68 Ohio St.3d 369, 371. A trial court's decision regarding child support will not be reversed absent an abuse of discretion. Id.
Pursuant to R.C. 3113.215(B), a trial court is required to calculate the amount of an obligor's child support obligation in accordance with statutory guidelines. R.C. 3113.215(B)(1). The support obligation calculated pursuant to the guidelines is rebuttably presumed to be correct. Id. The trial court may not deviate from the guideline amount unless it makes factual findings that the guideline support obligation is unjust or inappropriate, and not in the child's best interest. Id.
In determining whether a deviation from the guideline support obligation is appropriate, the trial court may consider the amount of time that the children spend with each parent. See LaLibertev. LaLiberte (1995), 105 Ohio App.3d 207, 212; R.C.3113.215(B)(3)(d). However, R.C. 3113.215(B)(6) does not provide for an automatic reduction in a child support obligation under a shared parenting plan. Pauly v. Pauly (1997), 80 Ohio St.3d 386,389. Instead, the trial court must examine each case on its merits and only deviate when it finds that it is in the best interest of the children to do so. Id.
In the present case, the record indicates that the trial court properly considered the time that each parent would be caring for the children, as well as the great disparity in income between the parties. The trial court concluded that appellant's lack of adequate financial resources to care for the children did not warrant a deviation from appellee's guideline child support obligation. We find that the trial court's calculation of appellee's child support obligation does not constitute an abuse of discretion. Appellee's second cross-assignment of error is overruled.
Cross-assignment of Error No. 3:
 THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING SPOUSAL SUPPORT IN THE AMOUNT OF $1200 PER MONTH WHERE THERE WAS NO NEED ESTABLISHED FOR THAT MUCH SUPPORT.
In his final cross-assignment of error, appellee argues that the trial court erred by awarding spousal support absent evidence of appellant's need for spousal support. Appellee contends that an award of spousal support must be based strictly on financial need.
A trial court has broad discretion in determining the proper amount and duration of spousal support based on the facts and circumstances of each case. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64,67. Accordingly, a trial court's award of spousal support will not be disturbed absent an abuse of discretion. Id.
When making an award of spousal support, the trial court must consider each of the fourteen factors listed in R.C. 3105.18(C).Kaechle v. Kaechle (1988), 35 Ohio St.3d 93, 96. The trial court must consider each factor and not base its decision on any one factor in isolation. Id. While a number of the statutory factors relate to financial need,[2] others exist to assist the trial court in achieving an equitable result.[3] Rheude v. Rheude
(May 5, 1997), Clermont App. No. CA96-10-084, unreported, at 10. Even though financial need is an essential element in some of the factors, need is ultimately a "relative term, the conception of which must, within reasonable limits, vary with the personal situation of the individual employing it." Id., citing Kunkle at 69.
In the present case, the evidence revealed the following: The parties were married for seven years. Appellant has a high school diploma, while appellee holds a master's degree in electrical engineering. Appellee went to college while the parties were living together prior to their marriage. During that time, appellant worked in a factory to support the family. After their marriage, appellant did not work outside the home so that she could care for the parties' children. Appellant presently works for Kroger and earns $5.75 per hour. In 1997, appellee earned a base salary of $78,000 and received a $10,000 bonus that same year. Although little direct testimony was offered on appellant's financial need for spousal support, it is apparent from appellant's testimony that her expenses greatly exceed her income.
In light of the foregoing, including, especially, appellant's inability to cover her expenses with her income, the substantial disparity in the parties' income, the relative earning abilities of the parties, the fact that appellant supported appellee while he obtained his graduate degree, and appellant's lost income production capacity as a result of her shouldering substantial marital and parental responsibilities, we find no abuse of discretion by the trial court in awarding appellant spousal support of $1,120 per month for a period of three years. Further, since the trial court specifically retained jurisdiction over spousal support, the award can be modified if there is an appropriate change in circumstances. Appellee's third cross-assignment of error is overruled.
Judgment is affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] The parties' eldest child was emancipated in May 1999. The trial court found that the small amount of child support that would be paid prior to the child's emancipation did not justify an order for child support.
[2] The payee spouse's financial need is inherent in some of the factors, including: the income of the parties; the retirement benefits of the parties; the relative extent of education of the parties; the relative assets and liabilities of the parties; the time and expense necessary for the payee spouse to acquire education, training, or job experience in order to obtain appropriate employment, and the lost income production of either party resulting from that party's marital responsibilities. R.C.3105.18(C)(1)(a), (b), (d), (h), (i), (k), and (m).
[3] Although some factors may fall into both categories, the following factors do not solely address the payee spouse's need for spousal support: the duration of the marriage, the standard of living of the parties established during the marriage; the relative extent of education of the parties; the contributions of each party to the education of the other; the tax consequences of a spousal support award; and the lost income production due to a spouse's marital responsibilities. R.C. 3105.18(C)(1)(e), (g), (h), (j), (l), and (m). The statute further requires that the trial court consider "any other" relevant or equitable factor. R.C. 3105.18(C)(1)(n).