OPINION
{¶ 1} Plaintiff-appellant Melissa K. Day (hereinafter "Day") appeals from a decision of the Clark County Court of Common Pleas, Domestic Relations Division, which reallocated the parental rights and responsibilities for Day's two minor children to her ex-husband, Lucas S. Smith (hereinafter "Smith"), the children's biological father. As a result, Smith became the primary legal custodian and residential parent of the parties' minor children.
 {¶ 2} Day contends that the trial court erred when it held that it would be in the best interests of the parties' minor children to be removed from her custody and permanently placed in the care of Smith. Day also asserts that the decision of the trial court was against the manifest weight of the evidence. Day argues that the trial court abused its discretion when it awarded Smith the entire amount of child support payments being held in escrow during the pendency of this litigation. Lastly, Day asserts that in light of certain failures on the part of her trial attorney, she received ineffective assistance of counsel.
 {¶ 3} For the following reasons, the judgment of the trial court will be affirmed.
 I {¶ 4} Day and Smith were married on April 3, 1999, in Grapevine, Texas, and the couple produced two children during their marriage, C.S., D/O/B 8/9/99, and A.S., D/O/B 9/12/00. After moving to the state of Ohio, the couple separated in March of 2002. On December 9, 2002, Day filed for divorce. The divorce was finalized by entry on March 14, 2003. Day was awarded custody of the two children, and Smith was required to pay $50.00 a month in child support to the mother. Smith's child support obligation was later increased to $272.69 a month which became effective on September 1, 2004.
 {¶ 5} Prior to her filing for divorce, Day became involved with a man named Mark A. Day, whom she later married on February 28, 2005. At the hearing, evidence was adduced that established that Mark Day is a convicted sex offender who served twenty-two months in prison after pleading guilty to two counts of gross sexual imposition involving two minors under the age of thirteen in Clark County, Ohio. One of the victims was Mark Day's biological son from a previous relationship while the other victim was a young female.
 {¶ 6} Most recently, allegations were made by Smith against Mark Day for sexually abusing C.S. and A.S. on two separate occasions. On December 1, 2002, Smith reported to the Springfield Police that his son, C.S., had told him that his mother's boyfriend, Mark Day, had molested him on November 28, 2002. The alleged incident was investigated by the Springfield Police as well as Clark County Children's Services. Mark Day passed a stipulated polygraph test with respect to the first incident, and because there was no corroborating evidence, medical or otherwise, to support Smith's claims, the investigation was closed as unsubstantiated.
 {¶ 7} The second alleged incident was reported by Smith on July 20, 2004, wherein he claimed that both C.S. and A.S. told him that Mark Day had performed various sexual acts on them. The children also recounted the story to the police officers, Children's Services workers, and Smith's father and girlfriend. No corroborating evidence was discovered, and although Mark Day did not participate in a polygraph test, no criminal charges were filed against him. Again, the investigation was closed as unsubstantiated.
 {¶ 8} On October 15, 2004, Smith filed an emergency ex parte petition to gain temporary custody of C.S. and A.S. pending a hearing to determine whether Smith should be designated the children's residential parent and legal custodian. In the petition, Smith alleged that the children were in danger of continuing sexual abuse at the hands of Day's boyfriend, Mark. The trial court granted the motion and gave Smith temporary custody of the children pending the outcome of the evidentiary hearing.
 {¶ 9} The custody hearing was held on April 4, 2005. In a decision filed on April 21, 2005, the trial court held in light of the danger posed by Mark Day's presence in the mother's household, it was in the best interests of the parties' minor children to be permanently placed with Smith. Thus, Smith was designated the children's primary legal custodian and residential parent. Day was granted visitation with the children, but Mark Day was not to be present during these meetings. Day was also ordered to pay child support to Smith in the amount of $388.00 a month.
 {¶ 10} It is from this judgment that Day presently appeals.
 II {¶ 11} Because Day's first and second assignments of error are interrelated they will be discussed together:
 {¶ 12} "THE TRIAL JUDGE ERRED AND ABUSED HIS DISCRETION IN THE CHANGE OF CUSTODY AND IN DETERMINING THAT IT WAS IN THE BEST INTEREST OF THE MINOR CHILDREN TO CHANGE CUSTODY AND TO REALLOCATE PARENTAL RIGHTS AND RESPONSIBILITIES TO THE APPELLEE, LUCAS S. SMITH CONTRARY TO LAW."
 {¶ 13} "THE TRIAL JUDGE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 14} In her first assignment, Day contends that the trial court erred when it held that it would be in the best interest of the parties' minor children to have Smith designated as their residential parent and legal custodian. Day argues that the trial court exhibited bias and prejudice towards Mark Day and had already determined that custody of the two minor children would be turned over to the father. We disagree.
 {¶ 15} While a trial court's discretion in a custody proceeding is broad, it is not absolute, and must be guided by the language set forth in R.C. § 3109.04. Baxter v. Baxter
(1971), 27 Ohio St.2d 168, 271 N.E.2d 873. In addition, the trial court's determination in a custody proceeding is, of course, subject to reversal upon a showing of an abuse of discretion.Trickey v. Trickey (1952), 158 Ohio St. 9, 106 N.E.2d 772. The discretion which the trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties involved. Miller v. Miller (1988),37 Ohio St.3d 71, 523 N.E.2d 846. The term "abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Decisions are unreasonable if they are unsupported by a sound reasoning process. AAAA Enterprises, Inc.v. River Place Community Urban Redevelopment Corp. (1990),50 Ohio St.3d 157, 161, 553 N.E.2d 597.
 {¶ 16} R.C. § 3104.04(F)(1) provides that in determining the best interests of the child, the court shall consider all relevant factors, including, but not limited to:
 {¶ 17} "(a) the wishes of the child's parents.
 {¶ 18} "(b) the wishes of the child if interviewed in chambers.
 {¶ 19} "(c) the child interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interests.
 {¶ 20} "(d) the child's adjustment to home, school, and community.
 {¶ 21} "(e) the mental and physical health of all persons involved.
 {¶ 22} "(f) the person more likely to honor visitation.
 {¶ 23} "(g) whether either parent has honored child support payments.
 {¶ 24} "(h) whether either parent has been convicted of abusing a child.
 {¶ 25} "(i) whether either parent will live outside the state."
 {¶ 26} In its decision flied on April 21, 2005, the trial court made the necessary findings with respect to each of the factors mentioned above. The trial court found that both parties care for their children very much, but in light of Day's marriage to a registered sex offender, it would be in the children's best interest to reside in Smith's home. Although Smith's home is small and sparsely furnished, it is the more ideal place for the children to be raised. The trial court further found Smith and his girlfriend, Amber Seelig, provide a more stable home environment for the children. Moreover, the court found that the older of the two children was exhibiting a marked improvement in school since having moved into Smith's home.
 {¶ 27} With respect to the home environment provided by Day, the trial court found that in light of Mark Day's criminal history and sex offender status, it would not be in the best interest of the children to live with their mother. During the hearing, Day could not provide a suitable answer when asked how she and her husband, Mark Day, could maintain their marriage if he was prohibited from ever being near the children. When Mark Day was questioned by the trial court, he refused to answer any questions with respect to his criminal history, and the court drew a negative inference from his silence. Interestingly, Melissa and Mark Day were not living together at the time of the hearing. The record reveals that as a result of his sex offender status, Mark Day could not reside with Ms. Day since she lived near a school.
 {¶ 28} Thus, the trial court relied on R.C. §3109.04(E)(1)(a) which states in pertinent part:
 {¶ 29} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on the facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent or either of the parents subject to a shared parenting decree, and that modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:. . . . (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 30} The trial court also considered the fact that Day was the primary caregiver and original residential parent of the two children. However, in light of Day's marriage to a convicted sex offender, the trial court found that Smith had met his burden in demonstrating a change in circumstance in the children's residential status that warranted a reallocation of parental rights and responsibilities. Although the court found that Day was a capable mother, it also held that it was not in the best interest of the parties' minor children "to be anywhere near Mark Day for any length of time whatsoever, even if they were with either of the parties herein." Trial Court Entry, April 21, 2005, pg. 10-11.
 {¶ 31} The trial court's decision was thorough and explicit in its findings. It is clear from a review of the transcript of the custody hearing that the trial court had not predetermined the outcome. All parties involved were given the opportunity to present evidence favorable to their individual cases. The trial court made all the necessary statutory findings in accordance with R.C. § 3109.04. Thus, the trial court did not abuse its discretion when it found that it would be in the best interest of the parties' minor children to permanently reside with their biological father.
 {¶ 32} With respect to Day's second assignment concerning the manifest weight of the evidence, we find that the trial court's decision was supported by competent and credible evidence. InBechtol v. Bechtol (1990), 49 Ohio St.3d 1, 550 N.E.2d 164, the Ohio Supreme Court stated that an award of custody supported by a substantial amount of credible and competent evidence should not be reversed as being against the manifest weight of the evidence.
 {¶ 33} Although the trial court found that the children interacted well with both parents, the court was clearly concerned that Day was married to a convicted sex offender against whom allegations of sexual abuse had been made by her own children. In support of her assertion that the evidence demonstrated she should maintain custody of the children, Day points out that Smith had an outstanding child support arrearage at the time of the hearing and that he was unable to provide convincing evidence that Mark Day had sexually abused the children. It is true that Smith was in arrears with respect to his child support payments, but the trial court provided for the payment of the outstanding sum in its decision as discussed in the next assignment of error.
 {¶ 34} Regarding the allegations of sexual abuse of the parties' children, the investigation conducted by the Springfield Police as well as Clark County Children's Services were closed as unsubstantiated, and no criminal charges were ever brought against Mark Day. However, with respect to the second instance of sexual abuse alleged, C.S. and A.S. told not only Smith that they had been molested, but they also told Smith's girlfriend and father, as well as the police and Children's Services workers. Moreover, it was undisputed that Mark Day had pled guilty to two counts of gross sexual imposition, one of the victims being his own biological son. When questioned by the trial court concerning her new husband's prior convictions, Day simply stated that she did not believe he was guilty based on her own review of Mark Day's criminal files. The trial court found it "almost incomprehensible that Ms. Day would choose to marry an individual with the criminal background which Mr. Day clearly possesses" and allow him to be around her young children. Based on the undisputed evidence before us, we must agree.
 {¶ 35} In light of the foregoing analysis, we hold that competent credible evidence existed for the trial court to award custody of the parties' minor children to Smith. The trial court's decision was not against the manifest weight of the evidence.
 {¶ 36} Day's first and second assignments of error are overruled.
 III {¶ 37} Day's third assignment of error is as follows:
 {¶ 38} "THE TRIAL JUDGE ERRED TO THE PREJUDICE OF THE APPELLANT AND ABUSED HIS DISCRETION WHEN HE AWARDED ALL ESCROWED CHILD SUPPORT TO THE APPELLEE, LUCAS S. SMITH, WHEN THE EVIDENCE DIDN'T SUPPORT AN AWARD."
 {¶ 39} In her third assignment, Day contends that the trial court erred when it awarded the entire amount of child support monies held in escrow to Smith once he was redesignated the primary legal custodian and residential parent of the parties' minor children. In particular, Day argues that evidence adduced at the hearing held on April 4, 2005, demonstrated that Smith was in arrears with respect to his child support payments. Thus, Day asserts that she was entitled to the amount held in escrow necessary to satisfy the arrearage. We disagree.
 {¶ 40} In an entry filed on April 21, 2005, the trial court stated in pertinent part:
 {¶ 41} "The credible evidence in this case suggests that Mr. Smith is in arrears with respect to his child support obligation in the approximate sum of $1,446.83 as of February 28, 2005, however, a vast majority of that arrearage accrued during the period of temporary orders and immediately following the filing of the parties' Divorce Decree."
 {¶ 42} Regarding the existing arrearage, the trial court went on to state:
 {¶ 43} "IT IS FURTHER ORDERED that any prior child support arrearage owed by the Defendant, Lucas Smith, to the Plaintiff, Melissa Day, shall be preserved and shall be reduced at the rate of Plaintiff's child support obligation owed to the defendant as set forth herein on a monthly basis until such time as the Defendant's child support obligation has been completely eliminated, at which time the Plaintiff's obligation to begin paying child support to the Defendant shall begin. * * *"
 {¶ 44} In light of the foregoing, the trial court was aware that Smith was in arrears with respect to his child support payments and made the proper order as to how the arrearage would be satisfied. Rather than deduct the outstanding arrearage from the amount of money being held in escrow which was awarded to Smith, the trial court held that Day's child support payments[1] would be deducted from the amount of the arrearage until said sum was eliminated. Once the arrearage of $1,446.83 was paid off, Day would then be required to begin making monthly child support payments directly to Smith. In this manner, the trial court awarded Smith the sums held in escrow for the immediate benefit of the parties' minor children as well as providing for means to satisfy the outstanding arrearage owed to Day.
 {¶ 45} Day's third assignment of error is overruled.
 IV {¶ 46} Day's final assignment of error is as follows:
 {¶ 47} "THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO:
 {¶ 48} "1. COUNSEL FAILED TO CONDUCT AN ADEQUATE INVESTIGATION OF THE CASE."
 {¶ 49} "2. COUNSEL FAILED TO REQUEST FOR DISCOVERY IN A TIMELY MANNER."
 {¶ 50} "3. COUNSEL FAILED TO PRESENT ALL REBUTTAL EVIDENCES."
 {¶ 51} "4. COUNSEL FAILED TO ASK ALL REBUTTAL QUESTIONS."
 {¶ 52} "5. COUNSEL FAILED TO OBJECT TO THE FALSE AND MISLEADING EMERGENCY EX PARTE MOTION AND AFFIDAVIT STATEMENTS BY APPELLEE'S AND APPELLEE'S ATTORNEY."
 {¶ 53} "6. COUNSEL FAILED TO INFORM APPELLANT OF THE FACTS REGARDING ESCROW CHILD SUPPORT MONEYS (sic) AND COUNSEL MADE A NEGOTIATED AGREEMENT WITH TRIAL JUDGE AND APPELLEE'S ATTORNEY WITHOUT CONSENTING FIRST WITH THE APPELLANT."
 {¶ 54} "7. COUNSEL FAILED TO ACT IN THE APPELLANT'S BEHALF REGARDING THE APPELLANT BEING PRESENT AT ALL SCHEDULED PRE-TRIAL CONFERENCES AND HEARINGS AND WAS DENIED HER DUE PROCESS OF LAW."
 {¶ 55} In her final assignment, Day contends that she received ineffective assistance of counsel at the trial level. In support of this assertion, Day advances the following arguments: 1) failure to adequately investigate her case; 2) failure to request discovery in a timely manner; 3) failure to present rebuttal evidence; 4) failure to ask pertinent rebuttal questions; 5) failure to object to ex parte motion filed by appellee; 6) failure to inform appellant of issues surrounding the escrow account; and 7) failure to act on appellant's behalf at pre-trial conferences and hearings.
 {¶ 56} The Sixth Amendment to the United States Constitution provides a criminal defendant the right to effective assistance of counsel. Strickland v. Washington (1984), 466 U.S. 668, 686,104 S.Ct. 2052, 2063. However, there is no constitutional right to be represented by counsel in a civil proceeding between individual litigants. Roth v. Roth (1989), 64 Ohio App.3d 768,776, 585 N.E.2d 482. The right to effective assistance of trial counsel attaches only to criminal proceedings and to proceedings for the permanent, involuntary termination of parental rights.Bailey v. Bailey (Sept. 27, 1996), Clark App. No. 96-CA-02; seeJones v. Lucas City Children Serv. (1988), 46 Ohio App.3d 85,86, 546 N.E.2d 471. If a litigant chooses to seek representation by an attorney, the litigant cannot complain that the attorney was ineffective and consequently require the other litigant to bear the loss for the negligent selection of an attorney. Roth,
supra, at 776. The proper remedy for a complaint of ineffective assistance of counsel in a civil suit may be a legal malpractice action. Additionally, the instant appeal does not involve the termination of Day's parental rights, merely a reallocation of those rights where she still maintains some visitation with her children. Thus, Day's final assignment of error fails to state a cause of action in a civil proceeding.
 {¶ 57} Day's final assignment of error is overruled.
 V {¶ 58} All of Day's assignments of error having been overruled, the decision of the trial court is affirmed.
Brogan, P.J. and Fain, J., concur.
[1] In the entry filed on April 21, 2005, the trial court ordered Day to pay $388.00 a month to Smith for child support payments.