OPINION *Page 2 
{¶ 1} On October 25, 2001, appellant, Tiffany Clark, and appellee, Michael Boals, entered into a shared parenting agreement regarding their child, Kyle Boals born October 29, 1999.
 {¶ 2} On December 15, 2004, appellee filed a motion to reallocate parental rights and responsibilities. On January 24, 2005, appellant filed a motion to terminate the shared parenting plan. Hearings before a magistrate were held on April 28, and August 17, 2005. By decision filed October 21, 2005, the magistrate recommended a change in custody, naming appellee as the sole residential parent. Appellant filed objections. By opinion filed August 16, 2006, the trial court denied the objections, with a minor modification. In a judgment entry filed September 1, 2006, the trial court followed the magistrate's recommendation.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DETERMINED APPELLANT INTERFERED WITH APPELLEE EXERCISING PARENTING TIME."
 II {¶ 5} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT BASED A CHANGE IN CUSTODY, IN PART, ON APPELLANT'S LACK OF STEADY EMPLOYMENT AND INCOME." *Page 3 
 III {¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT BASED A CHANGE IN CUSTODY, IN PART, ON APPELLANT'S INVOLVEMENT IN AN ADULT FEMALE RELATIONSHIP."
 IV {¶ 7} "THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING APPELLANT DID NOT PROPERLY PREPARE THE CHILD FOR SCHOOL."
 V {¶ 8} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DETERMINED A CHANGE IN CUSTODY AND PARENTING TIME WAS IN THE CHILD'S BEST INTEREST."
 VI {¶ 9} "THE TRIAL COURT ABUSED ITS DISCRETION BY NOT FINDING THE BENEFITS OF A CHANGE IN CUSTODY IS OUTWEIGHED BY THE HARM THAT WILL BE CAUSED."
 VII {¶ 10} "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT APPELLEE COULD PROVIDE A MORE STABLE HOME ENVIRONMENT, THUS USING THIS CRITERIA AS A BASIS FOR A CHANGE IN CUSTODY."
 VIII {¶ 11} "THE TRIAL COURT'S DECISION SHOULD BE REVERSED AND REMANDED AS APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE COUNSEL." *Page 4 
 {¶ 12} Prior to discussing the assignments of error sub judice, we will address the standard for a change of custody from a shared parenting agreement. We read R.C. 3109.04 (E)(1)(a) to require that in modifying a shared parenting custody agreement, there must be a change of circumstance from the prior order to warrant a change:
 {¶ 13} "(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 14} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 15} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 {¶ 16} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." *Page 5 
 {¶ 17} In addition to modification authorized under subsection (E)(1)(a), subsection (E)(2)(c) states the following:
 {¶ 18} "The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children. If modification of the terms of the plan for shared parenting approved by the court and incorporated by it into the final shared parenting decree is attempted under division (E)(2)(a) of this section and the court rejects the modifications, it may terminate the final shared parenting decree if it determines that shared parenting is not in the best interest of the children."
 {¶ 19} "[I]n order to terminate a shared parenting plan, the trial court must consider the factors contained in R.C. 3109.04(E)(1)(a), in addition to complying with subsection (c) of the statute." Oliver v.Arras, Tuscarawas App. No. 2001 AP 11 0105, 2002-Ohio-1590. Therefore, a trial court must determine the issue under the best interests of the child standard set forth in R.C. 3109.04(F). The threshold issues are: whether there has been a change of circumstance, if so, whether the change services the best interests of the child, and, as applied to this case, whether the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. *Page 6 
 {¶ 20} Decisions on custody lie within the trial court's sound discretion. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21; Trickey v.Trickey (1952), 158 Ohio St. 9. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983) 5 Ohio St.3d 217. Furthermore, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. CE.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson,66 Ohio St.3d 610, 1993-Ohio-9. "The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." Davis v. Flickinger, 77 Ohio St.3d 415, 418,1997-Ohio-260.
 I, II, III, IV {¶ 21} These assignments address whether there has been a change of circumstance. Appellant claims the minimal number of parenting time disputes, her lack of steady employment, her lesbian lifestyle, and her failure to prepare the child for school are insufficient reasons to warrant a finding of change of circumstance. We concede any of these facts standing alone are not sufficient to find a change of circumstance. However, taken as a whole, along with the other facts, we find they are sufficient to establish a change of circumstance in this case. *Page 7 
 {¶ 22} In his October 21, 2005 decision, the magistrate found the following in pertinent part:
 {¶ 23} "j. The Magistrate finds that the second petitioner is the party who is more likely to facilitate and honor a court-ordered schedule of parenting times. The Magistrate finds from the evidence admitted into the record that in the early portion of September of 2004, the first petitioner denied the second petitioner parenting time contact with Kyle without good cause to do so. She in fact admitted to denying the second petitioner parenting times with Kyle on at least three separate occasions since the child was born. The evidence also shows, that on occasion, the first petitioner has been agreeable to the second petitioner having some additional time with Kyle.
 {¶ 24} "l. The first petitioner was unemployed as of the initial day of this hearing, not having been employed for nearly three months. Her sole source of income at that time, according to her testimony, was the child support paid to her by the second petitioner. Between the first and second day of the hearing, the first petitioner worked for approximately two months through a temporary service at McGraw-Hill. She was paid $9 an hour at this temporary job. By the second day of the hearing, the first petitioner was again out of work and awaiting another assignment from the temporary service with which she was enrolled. The first petitioner also claimed to be earning $300 a month doing babysitting and another $300 a month of `piece work'.
 {¶ 25} "m. The evidence shows that the first petitioner held employment with Meijers from 2000 until she voluntarily quit in 2003. She had earned $8.75 an hour at this position. Since leaving Meijers, the first petitioner had also worked for Frito-Lay for a couple of months on a part-time basis. The Magistrate finds from the evidence of the *Page 8 
first petitioner's inconsistent employment history and earnings history raises a considerable amount of doubt in his mind as to whether she earns a sufficient income to provide for Kyle on her own. The first petitioner's testimony shows that she `owns' her home and that she was `current' on her mortgage obligation of $650 per month and utilities as of the second day of the hearing. The Magistrate finds that this is so due to the fact that her current romantic interest, Andrea, was paying one-half of the mortgage and utility bills.
 {¶ 26} "n. The first petitioner is not married. Throughout 2003 and 2004, she dated and was involved in a romantic relationship with an adult female, Bobbi Wildermuth. The first petitioner's relationship with Ms. Wildermuth ended in October of 2004. As of the second day of the hearing, the first petitioner was involved in a new relationship with another female adult, Andrea Wyeth, who had been living with her in her home since May of 2005.
 {¶ 27} "s. The Magistrate finds from the evidence admitted into the record that the (sic) while the first petitioner enrolled Kyle in a Head Start pre-school program, she chooses not to have him attend classes on a regular basis. The first petitioner rationalizes this practice by pointing out that attendance is not mandatory. The Magistrate finds from the evidence that two reasons the first petitioner does not have Kyle attend classes regularly is that she likes to sleep late into the morning and that she does not enforce a reasonable bed time for Kyle. The Magistrate finds the first petitioner's rationalization to be flimsy and to ignore the fact that the child can realize potentially wide benefits from regular attendance at this program." *Page 9 
 {¶ 28} All of these findings are substantiated in the record. T. at 11-19, 21-22, 27-28, 30-32, 36, 128-131, 159-160, 163, 172, 177-178, 190, 200, 260-261, 262-263, 265, 270-271, 277, 279, 281, 282-283, 354, 395-397, 402-403, 420-422, 424. In contrast, appellee maintains steady employment with the Pataskala Police Department, is in a stable, committed marital relationship, and wants Kyle to attend preschool regularly. T. at 147, 151-153, 158, 163-164, 203, 261-262, 265-266. In addition, there was testimony concerning Kyle's slow social development, and appellant's inappropriate use of alcohol and language in front of Kyle. T. at 26, 35-36, 39, 113-114, 125-127, 133-137, 199, 202-203, 263-264, 273, 351-352.
 {¶ 29} Upon review, we find the record supports sufficient reasons to establish a change of circumstance in this case.
 {¶ 30} Assignments of Error I, II, III and IV are denied.
 V {¶ 31} Appellant claims the trial court erred in finding a change in custody and parenting time was in the best interests of the child. We disagree.
 {¶ 32} R.C. 3109.04(F) sets forth the following best interests factors:
 {¶ 33} "(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 {¶ 34} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 35} "* * * *Page 10 
 {¶ 36} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 37} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 38} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 39} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 40} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 41} "* * *
 {¶ 42} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 43} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
 {¶ 44} "(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:
 {¶ 45} "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children; *Page 11 
 {¶ 46} "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 {¶ 47} "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
 {¶ 48} "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 {¶ 49} "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."
 {¶ 50} Appellee is in committed marital relationship, and can provide Kyle with stability and a family unit, unlike appellant who has different partners moving in and out of the home. T. at 243, 284. Kyle gets along well with his stepmother and stepsister. T. at 103, 109-110, 137, 243. There is structure and discipline in appellee's home, and more of a routine, including a regular bedtime, unlike appellant's lack of discipline and lackadaisical approach to bedtime and getting up in the morning. T. at 102, 137, 284. When Kyle is in appellee's care, he arrives to preschool on time and is right on schedule to participate in the different activities, unlike appellant's half-hearted attempt to have Kyle attend preschool even after the teachers informed appellant Kyle benefits from preschool activities. T. at 266. Kyle is becoming more social. T. at 243, 245.
 {¶ 51} Upon review, we find the record supports the fact that the child's best interests will be best served with termination of the shared parenting plan and a change of custody to appellee.
 {¶ 52} Assignment of Error V is denied. *Page 12 
 VI {¶ 53} Appellant claims R.C. 3109.04(E)(1)(a)(iii), requiring a finding that the "harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child" was not met. Specifically, appellant claims the magistrate's "order" failed to include the requisite finding. We disagree.
 {¶ 54} In his decision at pages 6-7, the magistrate properly stated the required finding, quoting from Inscoe v. Inscoe (1997),121 Ohio App.3d 396, 412. However, in his decision at 8, the magistrate stated, "The Magistrate further finds that the harm likely to be caused by the modification." As pointed out by appellant, the trial court corrected the magistrate's error in its August 16, 2006 opinion:
 {¶ 55} "Further, the Court finds from the evidence that the harm likely to be caused by a change in custody is not out weighed by the benefits. The Court finds that the Magistrate did indeed make such a finding. The Magistrate's failure to complete his sentence to this regard is cured by the next sentence, which completes his meaning. The lack of this specific language in the uncompleted sentence is basically a typographical error. The court therefore sustains the objection to that degree. It is ordered that the sentence in question be corrected in the final entry to reflect that: `The harm likely to be caused by the modification in custody is not outweighed by the benefits.'"[1] *Page 13 
 {¶ 56} The magistrate's decision was not an "order." With the trial court's "correction," we find the requisite finding was made.
 {¶ 57} Assignment of Error VI is denied.
 VII {¶ 58} Appellant claims the trial court erred in finding appellee could provide a more stable home environment as a basis for a change in custody. We disagree.
 {¶ 59} Appellant argues the ability to provide a better environment is not enough to warrant a change in custody. In support, appellant cites the case of Davis v. Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260, quoting Wyss v. Wyss (1982), 3 Ohio App.3d 412, 416:
 {¶ 60} "`The clear intent of that statute [R.C. 3109.04] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.'"
 {¶ 61} While a better environment alone may not warrant a change in custody, it is a factor to be considered among other factors.Davis, at 419. The Davis court at 418 held:
 {¶ 62} "In determining whether a `change' has occurred, we are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her-including many of the factors in this case-and such a decision must *Page 14 
not be reversed absent an abuse of discretion. Miller v. Miller (1988),37 Ohio St.3d 71, 523 N.E.2d 846."
 {¶ 63} In the case sub judice, the trial court not only considered the home environment of both parties, but considered the issues of stability, structure, routine, discipline, preschool benefits and social improvement.
 {¶ 64} Upon review, we find the trial court based its decision on several issues, including the parties' respective home environments, which are supported by the record as cited supra.
 {¶ 65} Assignment of Error VII is denied.
 VIII {¶ 66} Appellant claims she was denied the effective assistance of counsel. We disagree.
 {¶ 67} A claim of ineffective assistance of counsel does not pertain to civil proceedings:
 {¶ 68} "The Sixth Amendment to the United States Constitution provides a criminal defendant the right to effective assistance of counsel.Strickland v. Washington (1984), 466 U.S. 668, 686, 104 S.Ct. 2052,2063. However, there is no constitutional right to be represented by counsel in a civil proceeding between individual litigants. Roth v.Roth (1989), 64 Ohio App.3d 768, 776, 585 N.E .2d 482. The right to effective assistance of trial counsel attaches only to criminal proceedings and to proceedings for the permanent, involuntary termination of parental rights. Bailey v. Bailey (Sept. 27, 1996), Clark App. No. 96-CA-02; see Jones v. Lucas City Children Serv. (1988),46 Ohio App.3d 85, 86, 546 N.E.2d 471. If a litigant chooses to seek representation by an *Page 15 
attorney, the litigant cannot complain that the attorney was ineffective and consequently require the other litigant to bear the loss for the negligent selection of an attorney. Roth, supra, at 776. The proper remedy for a complaint of ineffective assistance of counsel in a civil suit may be a legal malpractice action. Additionally, the instant appeal does not involve the termination of Day's parental rights, merely a reallocation of those rights where she still maintains some visitation with her children. Thus, Day's final assignment of error fails to state a cause of action in a civil proceeding." Smith v. Smith, Clark App. No. 2005 CA 47, 2005-Ohio-6840, ¶ 56.
 {¶ 69} Assignment of Error VIII is denied.
 {¶ 70} The judgment of the Court of Common Pleas of Licking County, Ohio, Domestic Relations Division, is hereby affirmed.
 By Farmer, J. Gwin, P.J. and Edwards, J. concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, Domestic Relations Division, is affirmed.
[1] We note the trial court's inclusion of the word "not" is a scrivener's error. The trial court attempted to correct the magistrate's language and erroneously included the word "not." Based upon the trial court's language in its August 16, 2006 opinion, and its approval of the magistrate's recommendation to terminate shared parenting and grant custody of the child to appellee, we find the trial court meant to correct the magistrate's error as "The harm likely to be caused by the modification in custody is outweighed by the benefits." *Page 1