ROTH, Appellee and Cross–Appellant,

v.

ROTH, Appellant and Cross–Appellee.

[Cite as *Roth v. Roth* (1989), 65 Ohio App.3d 768.]

Court of Appeals of Ohio,
Lucas County.

No. L–88–279.

Decided Dec. 29, 1989.

George Gernot III, for appellee and cross-appellant.

Mervin S. Sharfman, for appellant and cross-appellee.

HANDWORK, Presiding Judge.

This matter is before the court on appeal from the July 29, 1988 judgment entry of the Lucas County Court of Common Pleas, Domestic Relations Division.

On June 18, 1986, appellee, Lawrence R. Roth, filed a complaint for divorce and requested temporary custody of the minor child born to appellee and appellant, Ruth M. Roth Mills. On October 21, 1986, the court granted a

divorce to appellee pursuant to an oral agreement reached by the parties during the hearing. However, on August 20, 1987, the court entered a decision attempting to set aside the divorce decree and also granted permanent custody of the minor child to appellee. On July 29, 1988, the court entered a *nunc pro tunc* journal entry granting a divorce to appellee effective October 21, 1986, the date of the original order granting the divorce, because its prior order of October 21, 1986, was not properly journalized. In the July 29, 1988 journal entry, the court incorporated the August 20, 1988 decision with regard to the resolution of custody matters. The court further ordered a property division and assessed fees and expenses between the parties. Both parties have sought an appeal from the July 29, 1988 judgment.

The nature of a *nunc pro tunc* judgment generally prevents an appeal therefrom. *In re Estate of Parmelee* (1938), 134 Ohio St. 420, 424, 13 O.O. 19, 21, 17 N.E.2d 747, 748. However, in this case an appeal from the *nunc pro tunc* judgment was proper.

The function of a *nunc pro tunc* journal entry is to correct an omission in a prior journal entry so as to enter upon the record judicial action actually taken but erroneously omitted from the record. *McKay v. McKay* (1985), 24 Ohio App.3d 74, 75, 24 OBR 129, 129–130, 493 N.E.2d 317, 317–318. A *nunc pro tunc* judgment cannot be used to change a prior journal entry unless it did not reflect what was actually decided by the court. *State, ex rel. Cincinnati, v. Schneider* (1950), 89 Ohio App. 96, 45 O.O. 242, 100 N.E.2d 863, and *Herman v. Ohio Finance Co.* (1940), 66 Ohio App. 164, 166–167, 19 O.O. 444, 445, 32 N.E.2d 28, 30.

Although the court labeled its July 29, 1988 order as a *nunc pro tunc* journal entry, it is a *nunc pro tunc* judgment only insofar as it corrected some omissions in the record. That portion of the order which sought to correct the October 21, 1986 order to properly journalize the granting of a divorce was *nunc pro tunc* in nature. In addition, the order sought to journalize the August 20, 1987 decision which had never been journalized. Therefore, that portion of the order also corrected the record to reflect judicial action taken but not entered properly in the record. However, the judgment entry also decided the remaining issues in the case which had not been decided previously.

Since the prior decision of August 20, 1987, which decided the custody issue, was not final and appealable due to the fact that it was interlocutory in nature and did not contain the necessary Civ.R. 54(B) language, appellant could not have appealed from that judgment. Therefore, although the July 29, 1988 order is a *nunc pro tunc* order, in part, it was also the final order in

the case, and appellant properly filed a notice of appeal within thirty days from the date of the *nunc pro tunc* order. Consequently, appellant's appeal and appellee's cross-appeal were timely filed. We now proceed to address the merits of the appeals.

Appellant raises three assignments of error in her brief, which read as follows:

(1) "The trial court erred in granting custody of the parties [*sic*] minor child to the Plaintiff/Appellee as the decision was made against the manifest weight of the evidence and further presents an abuse of discretion by the court."

(2) "The Court erred in sustaining objections to questions posed to Appellant's expert witness thus causing substantial prejudice and detriment to the presentation of her case and constituted an abuse of discretion."

(3) "Numerous error [*sic*] and omissions arose during the conduct of the trial and that in their totality, Appellant suggests that the ineffectiveness of counsel caused the adverse outcome of her loss of custodial parental rights due to the individual and cumulative effect of prejudicial errors."

In her first assignment of error, appellant contends that the trial court's decision to grant appellee permanent custody of their minor child was contrary to the manifest weight of the evidence and constituted an abuse of discretion. Appellant makes two arguments: First, that the court abused its discretion by accepting the recommendation of the guardian *ad litem* who never interviewed the child or observed her interaction with either the parents or the stepparents and stepsiblings. Second, that the court abused its discretion by awarding the father custody after determining that a stepbrother in the father's household had sexually abused the child.

Whenever a trial court's discretion is subject to appellate review, it is to be examined to determine whether the exercise of that discretion was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142, and *Sinclair v. Sinclair* (1954), 98 Ohio App. 308, 310–313, 57 O.O. 347, 348–349, 129 N.E.2d 311, 314–315. An abuse of discretion is not shown by the mere fact that the reviewing court would have come to a different conclusion. *Cox v. Fisher Fazio Foods, Inc.* (1984), 13 Ohio App.3d 336, 337, 13 OBR 414, 415–416, 469 N.E.2d 1055, 1057. Instead, the exercise of discretion must have been contrary to reason and the evidence. *State, ex rel. Smith, v. Indus. Comm.* (1986), 26 Ohio St.3d 128, 131, 26 OBR 110, 112, 498 N.E.2d 447, 449.

With respect to her first argument, there is nothing in the record to suggest that the trial court did not consider the basis for the guardian *ad*

*litem*'s recommendation and weigh it accordingly. There is evidence in the record which indicates that the court-appointed psychologist also came to the same conclusion that the father should be granted custody. Both the guardian *ad litem* and the psychologist relied on information from others concerning the child's interaction with immediate and extended family members. Furthermore, both parents spoke highly of the other and acknowledged the other's relationship with and ability to care for the child. The child's interaction with the individuals involved is not a significant factor in this case because the parents are equally suitable in this area. The significant factors which tip the scale in the father's favor are that the extended family members reside in the immediate vicinity and frequently see the child and that the father is geographically more stable than the mother. Thus, we find that the court did not abuse its discretion by accepting the guardian *ad litem*'s recommendation.

Secondly, with regard to the sexual abuse allegations, the court specifically found that the mother did not coach her child to make the allegations of sexual abuse and that a child of her age does not generally have the ability to fabricate this type of allegation. Therefore, even though no physical evidence of sexual abuse was proven, the court found that the allegations were true. Despite this finding, the court awarded custody of the child to the father with direction that the child never be left with the stepbrother unsupervised.

Appellant believes it is unreasonable to expect that this protective order can be complied with when both parents work. Therefore, appellant concludes that the court abused its discretion by awarding custody to the father. Appellant argues further that the best interests of the child demand that she should be placed with the mother where no harm is threatened.

As we have stated previously, upon a review of the evidence and the factors which would determine custody in this case, the parents were almost equally ranked. However, the father's stability and location near the extended family tipped the scale in his favor. Appellant argues that the allegation of sexual abuse and the fact that she was the primary caretaker should have tipped the scale back in her favor.

With regard to the latter argument, the primary caretaker doctrine has not been adopted in Ohio. *Thompson v. Thompson* (1987), 31 Ohio App.3d 254, 255–257, 31 OBR 538, 539–541, 511 N.E.2d 412, 413–415. However, this fact can be taken into consideration when reviewing the other factors listed at R.C. 3109.04(C). *Id.* In this case, the court had evidence before it that the father had taken over the primary caretaker role during the period when the child was with him after the complaint for a divorce was filed. Appellant

testified herself that the father was properly caring for the child. Therefore, the record indicates that the parties were equally capable of caring for the child.

With regard to the sexual abuse allegations, the record and the decision of the court dated August 20, 1987, demonstrate that the court considered the factors enumerated in R.C. 3109.04(C) when making the custody award. A necessary part of that determination was the allegation of sexual abuse. The court specifically found that the allegations of sexual abuse were true. That conclusion is supported by the evidence. While there was no proof of physical abuse, the psychologist testified that a child of that age seldom has the ability to fabricate such a story and there did not appear to be any coaching by the mother. Furthermore, there was testimony that the child had stated that her stepbrother (the son of the father's new wife) had improperly touched her. Whether this touching was intentional or accidental was never proven. Therefore, to insure the child's safety, a precautionary order was made to bar the father from leaving the child and her stepbrother together unattended. The court, as well as the guardian and psychologist, felt that this was an adequate measure under the circumstances. Therefore, we conclude that this was a reasonable choice to be made. The purpose behind giving a trial court discretion to decide such issues as custody is that there will often be several reasonable alternatives. However, only one person can make the choice. Undoubtedly, someone will disagree with that decision. However, since the court's decision was within the bounds of reasonableness and was prudently made, we find that the court did not abuse its discretion in making this decision.

Accordingly, we find appellant's first assignment of error not well taken.

Appellee's cross-assignment of error is directly related to appellant's first assignment of error and therefore will be discussed next. His assignment of error reads as follows:

"The trial Court's finding 'that the allegation of sexual abuse is true' was against the manifest weight of the evidence."

We note that this assignment of error appears to be an attempt by the father to raise issues concerning a third party (his stepson). However, the issue also concerns the father in terms of the custody award. Therefore, we will address the assignment of error from the father's perspective only.

In assessing appellee's manifest weight argument, we are guided by the standard of whether there is "some competent, credible evidence going to all the essential elements of the case." See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, at syllabus.

While appellee correctly notes that there was no evidence of physical abuse, a caseworker for the Lucas County Children Services Board testified that the child had stated during a session with him and a psychologist for the agency that the stepbrother had hurt her "monkey" (vagina) but does not do it any more. The psychologist's testimony was a little less specific inasmuch as he testified that the child only implied that she had been touched before but was now recanting her story. The mother also testified to similar statements the child had made to her. Therefore, there was evidence before the court, if believed, which would support the court's finding that the allegations were true.

Consequently, we find appellee's sole cross-assignment of error not well taken.

In appellant's second assignment of error, she asserts that the court erred to her prejudice by excluding from evidence testimony of appellant's expert. Appellant sought to introduce evidence regarding the effect of child sexual abuse on another child in the same household who was not abused. Appellant's intent, obviously, was to show that appellee's stepson was more likely to sexually abuse someone because his father had sexually abused the stepson's older sister.

Evid.R. 705 permits an expert to give an opinion based upon a hypothetical question which presents the facts proven at trial. However, the question must fully and accurately state the facts. *Manley v. Coleman* (1924), 19 Ohio App. 284, 295. The omission of key facts is improper inasmuch as it will affect the answer and thereby render it irrelevant. *Id.* See, also, *Mayhorn v. Pavey* (1982), 8 Ohio App.3d 189, 192–193, 8 OBR 258, 261–263, 456 N.E.2d 1222, 1226–1227, and *Surman v. Ohio & Pennsylvania Oil & Gasoline Co.* (1962), 116 Ohio App. 453, 480–494, 22 O.O.2d 292, 307–315, 183 N.E.2d 386, 404–414. The trial court is given the discretion to exclude such misleading questions from the evidence. *Mayhorn v. Pavey, supra,* 8 Ohio App.3d at 192, 8 OBR at 261–262, 456 N.E.2d at 1226–1227.

The hypothetical question proffered in this case failed to take into account the fact that the abusing father had been committed to a mental institution, the son was now living with his mother and appellee, and the abused sibling was not living with the son. Since these facts may have had an impact on the answer given by the expert, we find that the trial court did not abuse its discretion by excluding the answer to appellant's hypothetical question from evidence.

Appellant's second assignment of error is, therefore, found not well taken.

In her third and final assignment of error, appellant argues that the judgment should be reversed because her counsel was ineffective. Appellant contends that ineffective assistance of counsel is now recognized under Civ.R. 60(B)(1) as a proper grounds for relief from judgment. Therefore, appellant urges that we adopt the ineffective assistance of counsel doctrine in this case to justify reversal of the judgment.

Whether or not appellant could have obtained relief from the judgment in this case under Civ.R. 60(B)(1) is not before us since appellant never filed such a motion. The real question before us is whether appellant has a right to effective assistance of counsel.

The Sixth Amendment to the United States Constitution provides a right to effective assistance of counsel in a criminal proceeding. *Strickland v. Washington* (1984), 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 692. The right to be represented by counsel in a civil proceeding where the state seeks to take the defendant's life, liberty, or property is guaranteed by the Fifth Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment. However, in a civil case between individual litigants, there is no constitutional right to representation. The state does provide a forum, via the judicial system, in which litigants can resolve disputes. Litigants may seek to be represented in this forum by attorneys trained in procedure and the law. But it is the litigant himself who selects that attorney. Therefore, the litigant cannot thereafter complain that his attorney was ineffective and require the other litigant to bear the loss for such negligent selection of an attorney. See *Link v. Wabash RR. Co.* (1962), 370 U.S. 626, 633–634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, 739–740. Although the custody award will not be affected, any complaint of ineffective assistance of counsel may only be resolved in a malpractice action.

Accordingly, we find appellant's third and final assignment of error not well taken.

Having found that substantial justice has been done the parties complaining, the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred in this appeal.

*Judgment affirmed.*

GLASSER and ABOOD, JJ., concur.