JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Jennifer Shamaly appeals the fifteen-year sentence she received as a result of pleading guilty to involuntary manslaughter and aggravated robbery. She assigns the following three errors for our review:
 "I. The trial court erred when it failed to determine whether its sentence was influenced by the allegedly untruthful statement of a co-defendant."
 "II. The trial court erred when it failed to impose a sentence of four years on each offense, with each sentence running concurrently with the other."
 "III. The trial court erred when it sentenced Ms. Shamaly to one day per year of solitary confinement." *Page 2 
 {¶ 2} Having reviewed the record and pertinent law, we affirm in part, and vacate in part the sentence as to the imposition of solitary confinement. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Shamaly on two counts of aggravated murder, with felony-murder and a three-year firearm specifications, and two counts of aggravated robbery with a three-year firearm specification. Shamaly pleaded guilty to an amended charge of involuntary manslaughter, with an amended one-year firearm specification, and aggravated robbery with an amended one-year firearm specification.
 {¶ 4} On March 9, 2006, the trial court sentenced Shamaly to seven years for involuntary manslaughter, seven years for aggravated robbery, and one year for the firearm specification. All counts were to be served consecutively for a total of fifteen years.
 {¶ 5} At the sentencing hearing, the trial court also stated that a minimum fine was ordered unless Shamaly proved she was indigent. In the sentencing order, a fine is ordered, but the amount is not indicated. It was not until June 7, 2006, that the trial court, via a nunc pro tunc journal entry, finalized the sentence by stating that no fine would be imposed due to Shamaly's indigence.
 {¶ 6} Between the time of the original sentencing entry and the nunc pro tunc order, Shamaly filed a motion to reconsider and to modify the sentence. She argued *Page 3 
that the trial court during sentencing relied upon a false statement made by her co-defendant. The trial court denied the motion for reconsideration.
 Appellate Jurisdiction {¶ 7} We must first address the state's argument that Shamaly's appeal is jurisdictionally flawed. The state contends that the thirty-day period for filing the appeal commenced on the date of the first journal entry, dated March 9, 2006, and not the later nunc pro tunc order, dated June 7, 2006. In the March 2006 journal entry, the trial court sentenced Shamaly but did not specify the amount of the fine. The order references a fine, but no amount.
 {¶ 8} On June 7, 2006, the trial court issued a nunc pro tunc entry in which the court ordered no fine imposed because Shamaly was indigent. We conclude the March 2006 order was not final and the June 2006 order was, but was mislabeled as a nunc pro tunc order.[1] The mislabeling of the order does not void its otherwise *Page 4 
finality; consequently, the time to file the appeal commenced from the June 2006 order and as such we have jurisdiction over this appeal.
 Motion for Reconsideration and Modification of Sentence {¶ 9} In her first assigned error, Shamaly contends the trial court erred by denying her motion to reconsider and to modify her sentence. She argues the court relied on her co-defendant's false statement that Shamaly provided the gun for the robbery and murder.
 {¶ 10} At the outset, we note the state argues that Shamaly's motion for reconsideration was correctly denied because it was a nullity. We agree that motions for reconsideration after a final judgment are a nullity and do not suspend the time for filing a notice of appeal.[2]
However, as we stated above, the trial court's sentencing order did not become final until the court determined the issue regarding the fine that Shamaly would pay. The motion for reconsideration was filed before the sentence became final; consequently, we will review the assigned error.
 {¶ 11} We conclude the trial court did not err by denying the motion. Shamaly argued that in a taped telephone conversation her co-defendant, Rane Ayesh, *Page 5 
admitted that he lied when he told authorities that Shamaly provided the gun. Shamaly provided the tape and affidavit of the friend who taped the conversation. The trial court denied the motion finding it was "not well taken." We conclude the trial court did not abuse its discretion by denying the motion.
 {¶ 12} Appellate review of a post-Foster sentence is conducted under an abuse of discretion standard.[3] "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[4] In addition, pursuant to the Ohio Supreme Court's holding in State v.Mathis,[5] courts must keep the following in mind when sentencing a criminal defendant:
 "Although after Foster, the trial court is no longer compelled to make findings and give reasons at the sentencing hearing, * * * nevertheless, in exercising its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purpose of sentencing, and R.C. 2929.12, which provides guidance in considering the factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by the statutes that are specific to the case itself."[6] *Page 6 
 {¶ 13} Shamaly's sentence falls within the statutory range provided, and she was, in fact, advised of this statutory range at her plea hearing. Although the trial court did consider the fact that Shamaly provided the gun, it also relied on other factors in sentencing Shamaly. The court stated Shamaly was responsible for calling the victim to the scene; she had two prior felony convictions for cocaine abuse; she violated her community control sanction; and, she received drug rehabilitation treatment but failed to stay away from the drug scene. The court also relied on the statements of Shamaly's second co-defendant, Houssam Albourque, who implicated her as playing a role in setting up the robbery and murder.
 {¶ 14} Based on these circumstances, and the fact the trial court sentenced Shamaly within the statutory range, we cannot conclude the trial court abused its discretion in sentencing Shamaly to a total of fifteen years. Accordingly, Shamaly's first assigned error is overruled.
 Ex Post Facto Effect of Foster Decision {¶ 15} In her second assigned error, Shamaly argues that because her criminal conduct pre-dated Foster, any retroactive application ofState v. Foster[7] is a violation of the ex post facto clause.
 {¶ 16} We reject her argument in light of this court's decisions regarding this identical argument.[8] In those decisions, we concludedFoster did not judicially *Page 7 
increase the range of a defendant's sentence, did not retroactively apply a new statutory maximum to an earlier committed crime, and did not create the possibility of consecutive sentences where none existed. We concluded that as a result, the remedial holding of Foster does not violate a defendant's due process rights or the ex post facto principles contained therein. Accordingly, Shamaly's second assigned error is overruled.
 Solitary Confinement {¶ 17} In her third assigned error, Shamaly contends the trial court's sentence, imposing solitary confinement on the anniversary of the victim's death, violated the sentencing laws.
 {¶ 18} The State concedes that this part of the sentence violates sentencing laws. The parties disagree, however, whether the entire sentence should be vacated because of this violation, or just the offending part of the sentence. We agree with the State that only the offending part of the sentence should be vacated, with the remaining part of the sentence affirmed. This comports with our handling of the identical issue in prior cases.[9] It also complies with the holdings of the Ohio *Page 8 
Supreme Court in State v. Evans[10] and State v. Saxon,[11] which held offending parts of sentencing orders may be vacated without a remand for resentencing. Accordingly, Shamaly's third assigned error has merit in part.
Sentence affirmed in part; imposition of solitary confinement vacated.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, JUDGE
SEAN C. GALLAGHER, P.J., and KENNETH A. ROCCO, J., CONCUR
[1] It is well established that a nunc pro tunc order that does not create or deny existing rights but merely clarifies the initial entry relates back to the time of the filing of the initial entry and does not extend the time for appeal. Gold Touch, Inc. v. TJS Lab Inc. (1998),130 Ohio App.3d 106, 109; Morton v. Morton (1984), 19 Ohio App.3d 212, 214;Mullen v. Mullen (Jan. 12, 1995), Cuyahoga App. No. 67587; Soroka v.Soroka (June 17, 1993), Cuyahoga App. No. 62739; Butler v. Butler (Feb. 13, 1992), Cuyahoga App. No. 61833. The purpose of a nunc pro tunc order is to have the court's judgment reflect its true action. The power to enter a judgment nunc pro tunc is restricted to placing on the record evidence of judicial action which has actually been taken. Roth v.Roth (1989), 65 Ohio App.3d 768, paragraph one of the syllabus. A nunc pro tunc judgment cannot be used to change a prior judgment entry unless the earlier entry did not reflect what was actually decided by the court. Id. at 771. Nunc pro tunc judgments are employed to make the record speak the truth, and the function of such entries is the correction of judgments rendered, to the extent that they fail to record, or improperly record the judgment rendered by the court.State v. Coleman (1959), 110 Ohio App. 475, 478-79. Thus, nunc pro tunc entries correct judicial errors, but are limited in proper use to reflecting what the court actually decided, not what the court should have decided or intended to decide. State ex rel. Litty v.Leskovyansky (1996), 77 Ohio St.3d 97, 100, 1996-Ohio-340; State ex rel.Fogle v. Steiner (1995), 74 Ohio St.3d 158, 163-164, 1995-Ohio-278.
[2] Pitts v. Dept. of Transportation (1981), 67 Ohio St.2d 378,380.
[3] State v. May, Cuyahoga App. No. 88083, 2007-Ohio-2110; State v.Fout, Franklin App. No. 06AP-664, 2007-Ohio-619; State v. Pressley, 5th Dist. No. CT2006-0033, 2007-Ohio-2171; State v.Lewis, 9th Dist. No. 23116, 2006-Ohio-5422.
[4] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[5] 109 Ohio St.3d 54, 2006-Ohio-855.
[6] ?38.
[7] 109 Ohio St.3d 1; 2006-Ohio-856.
[8] *State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715;State v. McCollins, Cuyahoga App. No. 88657, 2007-Ohio-2380; State v.Ferko, Cuyahoga App. No. 88182, 2007-Ohio-1588; State v. Brito, Cuyahoga App. No. 88223, 2007-Ohio-1311; State v. Jones, Cuyahoga App. No. 88134,2007-Ohio-1301.
[9] State v. Bruno, Cuyahoga App. No. 77202, 2001-Ohio-4227; State v.Hughes (Jan. 21, 1999) Cuyahoga App. No. 73279; State v. Snitzky (Nov. 25, 1998), Cuyahoga App. No. 74811; State v. Capone (July 20, 1995), Cuyahoga App. No. 67971; State v. Davis (June 8, 1995), Cuyahoga App. No. 64270; State v. Dawson (Nov. 18, 1993), Cuyahoga App. No. 63122;State v. Johnson (Aug. 20, 1992) Cuyahoga App. No. 61015; State v.Eberling (April 9, 1992), Cuyahoga App. Nos. 58559,58560.
[10] State v Evans, 113 Ohio St.3d 100, paragraph one of the syllabus;2007-Ohio-861.
[11]} 109 Ohio St.3d 176, 2006-Ohio-245.
 *Page 1