The STATE of Ohio, Appellee,

v.

YEAPLES, Appellant.

[Cite as *State v. Yeaples*, 180 Ohio App.3d 720, 2009-Ohio-184.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–08–14.

Decided Jan. 20, 2009.

John M. Kahler II, for appellant.

Richard Palau and Damon D. Alt, for appellee.

ROGERS, Judge.

{¶ 1} Defendant-appellant, Johnathan M. Yeaples, appeals the judgment of the Tiffin Municipal Court denying his motion to suppress evidence. On appeal, Yeaples argues that the trial court erred in denying his motion to suppress the results of his breath test because the state failed to prove substantial compliance with the Ohio Department of Health regulations governing the administration of breath tests. Finding that the state failed to present any evidence demonstrating substantial compliance with the instrument-check-solution refrigeration requirement pursuant to Ohio Adm.Code 3701–53–04(C), we reverse the judgment of the trial court.

{¶ 2} In December 2007, Yeaples was arrested and cited for operating a motor vehicle after underage alcohol consumption in violation of R.C. 4511.19(B)(3), a

fourth-degree misdemeanor. Prior to making the arrest, the police officer performed a horizontal-gaze nystagmus test ("HGN" test) and a field sobriety test, both of which evidenced Yeaples's probable consumption of alcohol. At the police station, a breath test was conducted, which established Yeaples's breath-alcohol level to be in excess of the legal limit of .02 grams of alcohol per 210 liters of breath. Thereafter, Yeaples entered a plea of not guilty to the citation.

{¶ 3} In January 2008, Yeaples filed a motion to suppress, setting forth almost 30 grounds to suppress the results of the field sobriety test, the HGN test, and the breath test.

{¶ 4} In February 2008, the trial court held a hearing on the motion to suppress. At the beginning of the hearing, Yeaples moved to withdraw numerous alleged violations in the motion to suppress based upon materials received during discovery. Thereafter, only ten grounds remained on which Yeaples alleged that the breath test was improperly conducted.[1]

{¶ 5} At the hearing on the motion to suppress, Patrolman Steve Niedermyer testified to the administration of the breath test. He stated that he is certified as a senior operator of the instrument, that he was handling the calibration of the instrument in December 2007; that he followed a checklist provided by the Ohio Department of Health on December 5 and December 12, 2007, to calibrate the instrument, and that the calibration tests revealed that the instrument was functioning properly. Patrolman Niedermyer stated that a solution provided by the Ohio Department of Health is used as part of the calibration process, that the solution container is kept after the solution is used, but that he could not recall the exact length of time the container is retained.

{¶ 6} The state presented no testimony regarding the refrigeration of the instrument-check solution or the exact length of time that the solution container was retained after the solution was discarded. Furthermore, Yeaples did not cross-examine Patrolman Niedermyer or raise any questions regarding these two issues.

{¶ 7} Thereafter, the trial court denied the motion to suppress, stating:

[B]ased on the testimony that we've had here today, and why I agree that the officer did not know whether or not those * * * solutions were retained for * * * a number of years, I do again find that there was substantial compliance in—in operating and maintaining that device and that indeed it was in proper working order.

---

1. Yeaples had not withdrawn his request to suppress the field sobriety test or the HGN test, but those issues were not raised in this appeal.

{¶ 8} In March 2008, Yeaples withdrew his plea of not guilty and entered a plea of no contest. The trial court then convicted Yeaples, sentenced him to a 30–day jail term, and ordered him to pay a $150 fine. Thereafter, Yeaples timely appealed the trial court's March 2008 judgment.

{¶ 9} In April 2008, this court dismissed the appeal, finding that the judgment was not a final order pursuant to R.C. 2505.02, because the judgment failed to reflect the specific offense for which Yeaples was convicted and sentenced.

{¶ 10} On May 16, 2008, the trial court filed a corrected judgment entry. At the bottom of the judgment entry, the trial court stated that the entry was effective as a nunc pro tunc entry retroactive to the original judgment.

{¶ 11} Thereafter, Yeaples appealed, presenting the following assignment of error for our review.

The trial court erred to the prejudice of the appellant by admitting into evidence a breath test result despite appellee state of Ohio having failed to prove substantial compliance with the Ohio Department of Health rules and regulations governing the administration of the breath tests.

{¶ 12} In his sole assignment of error, Yeaples asserts that the trial court erred when it found that the state showed substantial compliance with the Ohio Department of Health regulations governing the administration of breath tests. Specifically, Yeaples argues that the state did not meet its burden of proving that the instrument-check solution was kept under refrigeration when not in use, that the instrument-check-solution container was retained for reference until the instrument-check solution was discarded, and that the proper analytical techniques were used in checking for accurate calibration of the instrument.

{¶ 13} Before addressing Yeaples's assignment of error, we must first address the timeliness of this appeal. The state argues that this court is without jurisdiction to hear this appeal pursuant to App.R. 4(A) because the trial court's amended May 2008 judgment entry was effective as a nunc pro tunc entry, thereby making it retroactive to the original March 2008 judgment and because Yeaples filed his notice of appeal on May 22, 2008, the appeal is untimely.

{¶ 14} In order for this court to possess jurisdiction over an appeal, a notice of appeal must be filed within 30 days of the entry of the judgment or order appealed. App.R. 4(A); *State v. Miller* (Aug. 21, 2001), 3d Dist. No. 4–01–12, 2001 WL 950689.

{¶ 15} A trial court retains jurisdiction to correct clerical errors in judgment entries. *State v. Powell*, 3d Dist. No. 10–07–12, 2008-Ohio-1012, 2008 WL 623839, ¶ 8, citing *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19; Crim.R. 36. "The term 'clerical mistake' refers

to a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment." *Cruzado*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, at ¶ 19. A nunc pro tunc entry is the procedure used to correct clerical errors in a judgment entry, but the entry does not extend the time within which to file an appeal, as it relates back to the original judgment entry. *Gold Touch, Inc. v. TJS Lab, Inc.* (1998), 130 Ohio App.3d 106, 109, 719 N.E.2d 629; *Roth v. Roth* (1989), 65 Ohio App.3d 768, 771, 585 N.E.2d 482; *State v. Shamaly*, 8th Dist. No. 88409, 2007-Ohio-3409, 2007 WL 1934369, ¶ 8, fn. 1. Just because the trial court refers to an entry as nunc pro tunc does not make it so. *State v. Hopkins*, 3d Dist. No. 17–08–01, 2008-Ohio-2611, 2008 WL 2230071, ¶ 14. "The mislabeling of [an] order does not void its otherwise finality * * *." *Shamaly*, 2007-Ohio-3409, 2007 WL 1934369, at ¶ 8.

{¶ 16} In *Hopkins*, 2008-Ohio-2611, 2008 WL 2230071, this court found that when a trial court filed an entry labeled "nunc pro tunc entry," which corrected an earlier judgment this court had found to not be a final appealable order, it was not a true nunc pro tunc entry that applied retroactively, but instead, it was the original judgment entry from which an appeal could be taken. The trial court in *Hopkins* had filed a corrected entry on December 17, 2007, as a result of this court's earlier ruling that a prior entry was not a final appealable order. However, the trial court subsequently filed an entry nunc pro tunc to correct the spelling of Hopkins's name. Consequently, this court found the second appeal to be barred because the later true nunc pro tunc entry was made by the trial court to correct the appellant's name, and the appellant failed to file the appeal from the time of the original entry.

{¶ 17} In this case, the trial court filed a new judgment entry on May 16, 2008. This entry was the same as the original entry, except that it added the statutory violation for which Yeaples was convicted and sentenced. Also, at the bottom of the entry, the trial court wrote that it was effective as a nunc pro tunc entry, retroactive to the March 6, 2008 judgment entry.

{¶ 18} The May 16, 2008 judgment entry of the trial court is the original judgment entry from which Yeaples can appeal. If we were to find this to be an effective nunc pro tunc entry, making the judgment retroactive to March 6, as the state argues, it would bar Yeaples from an appeal merely because the trial court failed to properly memorialize the judgment. The March 6 entry was ineffective because it failed to state the statutory offense at issue. Without that statement, it was impossible to know from reading the entry of what offense Yeaples had been convicted. Because Yeaples filed a notice of appeal within 30 days of the trial court's May 16, 2008 judgment entry, which is the trial court's original judgment entry, this court possesses jurisdiction to hear this appeal pursuant to App.R. 4(A).

{¶ 19} Accordingly, because Yeaples's appeal is timely, we now consider his assignment of error.

{¶ 20} Appellate review of the trial court's ruling on a motion to suppress evidence presents mixed questions of law and fact. *State v. Dudli*, 3d Dist. No. 3–05–13, 2006-Ohio-601, 2006 WL 319143, ¶ 12, citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117. When deciding on a motion to suppress, the trial court is the trier of fact and judges the credibility of witnesses and determines the weight to be given to the evidence. *State v. Johnson* (2000), 137 Ohio App.3d 847, 850, 739 N.E.2d 1249. Therefore, when reviewing a trial court's decision on a motion to suppress, the appellate court must accept the trial court's findings of facts, provided they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583. The appellate court then reviews the trial court's application of the law to the facts de novo. *Roberts*, supra, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 21} When seeking to suppress the results of a breath test, the defendant must first set forth an adequate basis for the motion. *State v. Shindler* (1994), 70 Ohio St.3d 54, 58, 636 N.E.2d 319. The motion must state the "legal and factual bases with sufficient particularity to place the prosecutor and court on notice [as to] the issues [contested]." Id. at 58; Crim.R. 47. But a mere technical challenge to a breath test is sufficient even without case-specific allegations. *State v. Williams* (Apr. 24, 1998), 2d Dist. No. 16554, 1998 WL 214595, citing *State v. Palmer* (Mar. 8, 1995), 2d Dist. No. 3085, 1995 WL 96859.

{¶ 22} Once the defendant has established an adequate basis for the motion, the burden of proof shifts to the state to demonstrate substantial compliance with the Ohio Department of Health regulations. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 220, 524 N.E.2d 889.

{¶ 23} The extent of the state's burden to show substantial compliance varies with the degree of specificity of the violation alleged by the defendant. "When a defendant's motion to suppress raises only general claims, along with the Administrative Code sections, the burden imposed on the state is fairly slight." *Johnson*, 137 Ohio App.3d at 851, 739 N.E.2d 1249. Specifically, when a motion fails to allege a fact-specific way in which a violation has occurred, the state need only offer basic testimony evidencing compliance with the code section. *State v. Bissaillon*, 2d Dist. No. 06–CA–130, 2007-Ohio-2349, 2007 WL 1429626, ¶ 15.

{¶ 24} Whether a defendant's motion to suppress was sufficiently particular to shift the burden of proof to the state to show substantial compliance and the

extent of evidence needed to demonstrate substantial compliance have been addressed by several courts. In *Shindler*, 70 Ohio St.3d 54, 636 N.E.2d 319, the Supreme Court of Ohio found that a defendant's motion to suppress, which was an exact copy of a sample motion to suppress found in Painter, Ohio Driving Under the Influence Law (1990) 136–137, Section 11.16, was sufficient to raise issues regarding compliance with the Ohio Department of Health regulations and to shift the burden of proof to the state to demonstrate substantial compliance with those regulations. *Shindler*, 70 Ohio St.3d at 57, 636 N.E.2d 319. Thus the court held that it was impermissible to deny the motion to suppress without a hearing. Id. at 58, 636 N.E.2d 319.

{¶ 25} Furthermore, in *Johnson*, 137 Ohio App.3d 847, 739 N.E.2d 1249, a defendant's motion to suppress, which, among other things, asserted a failure to comply with the refrigeration requirement of Ohio Adm.Code 3701–53–04(C) stated, " '[t]he solution used to calibrate the testing instrument was invalid and not properly maintained in accordance with OAC 3701–53–04(C).' " Id. at 854, 739 N.E.2d 1249. The court found that even though the section of the motion alleging a violation of the refrigeration requirement was general, it was specific enough under *Shindler* to put the state on notice that it must demonstrate substantial compliance with that section of the statute. Id. at 851, 739 N.E.2d 1249. The court further found that the burden on the state to show substantial compliance was minimal and would have been satisfied with basic testimony that the solution was properly maintained but that the state failed to meet this burden because it presented no evidence or testimony as to this refrigeration requirement. Id. at 854, 739 N.E.2d 1249.

{¶ 26} While other cases appear to require a lesser burden on the state to demonstrate substantial compliance, we find these cases to be either distinguishable or inapposite with the decisions in *Shindler* and *Johnson*.

{¶ 27} In *Norwood v. Kahn*, 1st Dist. Nos. C–060497, C–060498, and C–060499, 2007-Ohio-2799, 2007 WL 1650052, the defendant used a shotgun motion to suppress, alleging over 15 violations of the Ohio Administrative Code in the administration of a breath test, including a violation of the requirement that the instrument-check solution be refrigerated. Id. at fn. 5. The *Kahn* court found that the motion was sufficiently specific to shift the burden of proof to the state to demonstrate substantial compliance, but despite the state's having presented testimony of compliance with only some of the implicated code sections, including presenting no evidence on the refrigeration requirement, the court found that the state had met its burden of proof to have the motion denied. Id. at ¶ 10.

{¶ 28} In *State v. Nicholson*, 12th Dist. No. CA2003–10–106, 2004-Ohio-6666, 2004 WL 2849229, the defendant also used a shotgun motion to allege over 15 violations of the Ohio Administrative Code, also including a violation of the

refrigeration requirement. Id. at ¶ 8, fn. 1. The court found the motion sufficiently particular to shift the burden of showing substantial compliance to the state, but the court found that despite specific allegations of code violations, the motion was only a general challenge to whether the machine was functioning properly and whether the instrument check was done on a weekly basis. Id. at ¶ 12. Based on this position, the court found that the state had met its burden with only general testimony as to the functioning and testing of the machine, without testimony evidencing substantial compliance with the code sections specifically alleged to have been violated, including the refrigeration requirement. Id. at ¶ 15.

{¶ 29} While these cases may appear to lessen the burden on the state to show substantial compliance, they are either distinguishable from or are not consistent with the holdings set forth in *Shindler* and *Johnson*. In *Kahn*, the court noted that the defendant had failed to use the discovery process at the time of the motion hearing to determine whether the state had, in fact, failed to comply with specific regulation requirements. *Kahn*, 2007-Ohio-2799, 2007 WL 1650052, at ¶ 9. The court, therefore, found that he did not have factual support for any of the allegations in his motion and therefore that evidence of general compliance with the Ohio Administrative Code was sufficient for the state to demonstrate substantial compliance. Id. However, in *Nicholson*, the court seemed to demand more specificity in the suppression motion than is required by *Shindler* or *Johnson*.

{¶ 30} Ohio Adm.Code 3701–53–04 governs the requirements for conducting a breath test and states:

(C) * * * After first use, instrument check solutions shall be kept under refrigeration when not being used. The instrument check solution container shall be retained for reference until the instrument check solution is discarded.

(D) Each testing day, the analytical techniques used in rule 3701–53–03 of the Administrative Code shall be checked for proper calibration under the general direction of the designated laboratory director. General direction does not mean that the designated laboratory director must be physically present during the performance of the calibration check.

Ohio Adm.Code 3701–53–04(D).

■■■ {¶ 31} In the case at bar, Yeaples's original motion to suppress, containing over 20 alleged violations of the Ohio Administrative Code in the administration of the breath test, was redacted to ten alleged violations after Yeaples received discovery from the state. In his appeal, Yeaples further limits the issues, asserting that the state failed to demonstrate substantial compliance with three requirements of the Ohio Administrative Code. Specifically, he contends that the state failed to show compliance with Ohio Adm.Code 3701–53–04(D),

requiring proper analytical techniques to be checked for calibration, and Ohio Adm.Code 3701–53–04(C), requiring the instrument-check solution to be refrigerated when not in use and the solution container to be retained until the solution is discarded. Of these three code requirements, all are specifically asserted in his motion to suppress, including the specific sections and subsections of the code, but Yeaples generally alleged code section violations without specific facts to support the claimed violations. However, Yeaples did specifically include the factual allegation that the instrument-check solution had not been refrigerated. The language in his motion to suppress is more specific than the motion in *Shindler*, which the court found to be sufficiently particular to shift the burden to the state to demonstrate substantial compliance. Therefore, we find that Yeaples's motion set forth the legal and factual bases with sufficient particularity to shift the burden of proof to the state to show substantial compliance with these code sections.

{¶ 32} Looking at the evidence presented by the state to demonstrate substantial compliance, Patrolman Niedermyer testified that the instrument-check-solution container is kept after the solution is used but that he could not remember the exact length of time the container was kept. Additionally, he testified at length to the calibration procedures and techniques that are used to ensure the breath test is working properly and is in compliance with the Ohio Department of Health regulations.

{¶ 33} Concerning the requirement that the instrument-check-solution container be retained for reference until the solution is discarded, pursuant to Ohio Adm.Code 3701–53–04(C), the state presented testimony that the instrument-check-solution container was retained after use but could not provide evidence on the exact length of time the instrument-check-solution container was kept. Additionally, Yeaples failed to cross-examine or present any evidence on this issue. In light of the "fairly slight" burden imposed on the state to demonstrate substantial compliance with a motion to suppress alleging general claims, *Johnson*, 137 Ohio App.3d at 851, 739 N.E.2d 1249; *Bissaillon*, 2007-Ohio-2349, 2007 WL 1429626, at ¶ 15, and in light of the fact that specific evidence of the exact period of time the instrument-check-solution container is kept after the solution is discarded is not necessary for a trial court to find substantial compliance with Ohio Adm.Code 3701–53–04(C), *State v. Douglas*, 1st Dist. No. C–030897, 2004-Ohio-5726, 2004 WL 2421847, ¶ 8, we find that competent, credible evidence exists to support the trial court's finding of substantial compliance with this regulation.

{¶ 34} Furthermore, we find competent, credible evidence of substantial compliance with Ohio Adm.Code 3701–53–04(D), requiring calibration of the breath-analysis instrument. Patrolmen Niedermyer testified extensively to fol-

lowing the Ohio Department of Health checklist for the instrument, testifying specifically to the fact that he followed the checklist to calibrate the machine on December 5 and December 12 and that it was functioning properly on both occasions.

{¶ 35} Finally, as to the requirement that the instrument-check solution be refrigerated when not in use, pursuant to Ohio Adm.Code 3701–53–04(C), the state failed to present any evidence whatsoever demonstrating refrigeration of the solution. Although the "fairly slight" burden on the state to show substantial compliance with this section would have been satisfied with minimal testimony on refrigeration, a total lack of evidence as to this requirement does not support the trial court's finding of substantial compliance. See *Johnson,* 137 Ohio App.3d 847, 739 N.E.2d 1249; *Bissaillon,* 2007-Ohio-2349, 2007 WL 1429626; and *State v. Kerr,* 6th Dist. No. H–02–028, 2002-Ohio-6358, 2002 WL 31630751. Therefore, we find that the trial court erred in denying Yeaples's motion to suppress.

{¶ 36} Accordingly, we sustain Yeaples's assignment of error.

{¶ 37} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WILLAMOWSKI, J., concurs.

SHAW, P.J., dissents.

SHAW, Presiding Judge, dissenting.

{¶ 38} I respectfully dissent from the majority decision to reverse this case based on the alleged failure of the state to specifically respond to a boilerplate allegation that the BAC Datamaster calibration solution was not properly refrigerated.

{¶ 39} Yeaples's motion to suppress was filed on January 15, 2008. This motion provided 29 grounds for suppression, including 26 allegations that appear to be nothing more than verbatim recitations of the Ohio Administrative Code. No facts specific to this case, other than Yeaples's name, are provided to support this motion. On January 28, 2008, the state served Yeaples with his requested discovery. On February 12, 2008, the trial court held a suppression hearing and ultimately denied Yeaples's motion to suppress.

{¶ 40} Yeaples did not modify or particularize his motion to suppress until the time of the suppression hearing. Even then, the amendment of Yeaples's motion to suppress was not in writing and did not contain particularized allegations.

Instead, his motion was modified only in terms of withdrawing various allegations as follows at the suppression hearing:

Mr. Kahler: After receiving discovery from the State there are some allegations in the motion to suppress that I would like to withdraw.

The Court: I appreciate that, makes it go a lot faster.

Mr. Kahler: Sure. Starting on page two of the motion.

The Court: All right.

Mr. Kahler: I would withdraw paragraphs seven, nine, and 10.

The Court: Okay.

Mr. Kahler: On page three of the motion, I would withdraw paragraphs 11, 14, 15, 16, 18, and 19.

The Court: Okay.

Mr. Kahler: On page four I'll withdraw paragraphs 24, 25, 26.

The Court: Okay.

Mr. Kahler: And on page five I'll withdraw paragraphs 27, 28, and 29.

The Court: Okay. All right. Thank you. So that basically leaves us with the, uhm, averments up front with the regards to the horizontal gase [sic]—or that the field sobriety tests were not in substantial compliance with the NITSA, that the HGN was not administered in strict compliance; that—did not conduct the tests within regulations of the Ohio Department of Health—not on file—and okay. All right. And number 8, I think—

Mr. Kahler: Excuse me, Your Honor. On further review, I see that it appears that the test was conducted within the two hour time limit so I'll also withdraw paragraph four on page two.

The Court: Okay. Thank you.

{¶ 41} It does not appear from this discussion that the trial court was entirely clear on exactly which portions of the motion to suppress Yeaples was attempting to withdraw or, more important, what particular allegations remained. Nevertheless, this was the end of the discussion with regard to what allegations were still to be included in the motion to suppress.

{¶ 42} In my view, this motion amounts to what the court, in *Norwood v. Kahn*, 1st Dist. Nos. C–060497, C–060498, and C–060499, 2007-Ohio-2799, 2007 WL 1650052, termed a "gotcha" motion. Using this type of motion, a defendant challenges the targeted evidence in the precise terms of every subsection of a statute or administrative code section pertaining to the collection or handling of that evidence, without any factual foundation pertinent to the case at bar, hoping that the state will simply neglect to make an evidentiary response to one or more of these sections.

{¶ 43} In addressing such a motion, the First District Court of Appeals adopted the rationale espoused by the Twelfth District Court of Appeals, holding, "Unless an accused, either through discovery or cross-examination at the hearing, points to facts to support the allegations that specific health regulations have been violated in some specific way, the burden on the state to show substantial compliance with those regulations remains general and slight."[2] *State v. Embry,* 12th Dist. No. CA2003–11–110, 2004-Ohio-6324, 2004 WL 2698417, at ¶ 29. See also *State v. Nicholson,* 12th Dist No. CA2003–10–106, 2004-Ohio-6666, 2004 WL 2849229; *State v. Welch,* 4th Dist. No. 07CA840, 2008-Ohio-675, 2008 WL 444632; *State v. Bissaillon,* 2d Dist. No. 06–CA–130, 2007-Ohio-2349, 2007 WL 1429626.

{¶ 44} In *State v. Johnson* (2000), 137 Ohio App.3d 847, 851, 739 N.E.2d 1249, the court referred to such a motion as raising only "general claims." The *Johnson* court held that "[w]hen a defendant's motion to suppress raises only general claims, along with the Administrative Code sections, the burden imposed on the state is fairly slight." *State v. Williams* (Apr. 24, 1998), 2nd Dist. No. 16554, 1998 WL 214595.[3]

{¶ 45} With a general motion to suppress, the state is required to demonstrate, in general terms, only that it substantially complied with the Department of Health regulations. *Nicholson,* 2004-Ohio-6666, 2004 WL 2849229, at ¶ 12. In other words, in the present case, the state needed only to show substantial compliance with the required calibration procedures, taken as a whole, not substantial compliance with each specific section of the Ohio Administrative Code cited in a form motion. *Nicholson,* 2004-Ohio-6666, 2004 WL 2849229, at ¶ 12, 15.

{¶ 46} During the hearing on the motion to suppress, Officer Niedermyer testified that he was certified as a senior operator to calibrate the BAC Datamaster. Niedermyer testified that the BAC Datamaster machine had been

---

**2.** The Fifth Appellate District Court of Appeals has echoed this emphasis on discovery, holding, "In order to support a motion to suppress with particular facts that would put the state on notice of the areas to be challenged, a defendant must first complete due and diligent discovery on all issues that he or she intends to challenge in the motion to suppress." *State v. Neuhoff* (1997), 119 Ohio App.3d 501, 506, 695 N.E.2d 825.

**3.** In reaching its conclusion that the state failed to prove substantial compliance with the requirement that the BAC Datamaster solution be refrigerated, the majority relied on *State v. Shindler* (1994), 70 Ohio St.3d 54, 636 N.E.2d 319. I respectfully disagree with the majority conclusion that *Shindler* stands for the proposition that the motion filed by Yeaples was sufficiently particular to place more than a slight, general burden on the state with respect to each of his allegations in the motion to suppress. First, *Shindler* is not factually analogous to the case at bar. In *Shindler,* the defendant's motion to suppress was overruled without any hearing on the motion. Second, in *Shindler,* although the defendant's motion contained some grounds that were analogous to form motions, the motion also contained facts supporting those grounds and alleging with some particularity the claimed violation. Therefore, the *Shindler* court was faced not only with a different issue, whether a hearing was warranted, but also with a motion that at least alleged some factual basis for the motion.

properly calibrated, that he had a record of the calibration, that his radio was turned off during the test, and that he followed the checklist for calibrating the BAC Datamaster. Given the general, factless nature of Yeaples's motion, the state needed only to present general evidence of its substantial compliance with the administrative regulations. Yeaples did not take the opportunity on cross-examination to challenge more specifically Niedermyer's testimony.

{¶ 47} Niedermyer's testimony clearly demonstrated that the state had substantially complied with the regulations that ensured that the test instrument was working properly and those that ensured that the test was administered correctly.

{¶ 48} For all of these reasons, I would conclude that the trial court did not err when it overruled Yeaples's motion to suppress. Accordingly, I would affirm the judgment of the trial court.